OPINION OF THE COURT
Joseph R Corso, J.
Pursuant to CPL article 730 the court ordered that the defendant be psychiatrically examined to determine his fitness to proceed to immediate trial. The reports of the psychiatrists having been received, defense counsel moved and the court ordered that a hearing be conducted. Defense counsel further moved that the hearing be closed to the public and the press. Upon notice given, the court has heard defense counsel in support of a closed hearing and representatives of the press in opposition thereto.
The defendant is awaiting trial under an indictment accusing him of the crimes of murder in the second degree, attempted murder in the second degree, assault in the first degree and possession of a weapon in the second degree.
Over a considerable period of time, a number of shootings were extensively reported in the daily press, not only locally but nationally. Young women in particular were the targets. The citizenry of the City of New York was alarmed and *875 frightened. On July 31, 1977, in the area of Bay 16th Street and Shore Parkway, in the Bensonhurst area of Brooklyn, while Robert Violante and Stacey Moskowitz were seated in a parked car, shots were fired through an open window of the car. Stacey Moskowitz was wounded. She subsequently died. Robert Violante was wounded and he suffered serious permanent physical injuries.
On August 11, 1977, the defendant was arrested and indicted for murder and a variety of other charges in Kings, Queens and Bronx Counties. His arrest, indictment and arraignment received extensive publicity nationwide and overseas.
On August 16, 1977, an order of Mr. Justice Leonard E. Yoswein directed that, under CPL article 730, the defendant be psychiatrically examined to determine his fitness to stand trial. Thereafter, a hearing, open to the public, was conducted. The defendant was found fit to stand trial. This proceeding generated wide publicity in all the media. Details, developed during the hearing, were extensively disseminated.
This court has directed that the trial of the defendant be conducted in the early part of April, 1978. Months have elapsed since the defendant was found fit to proceed and he continues to be confined in Kings County Hospital. The com ,, therefore, found it advisable to direct a second examination to determine his present fitness to proceed to trial immediately.
The defendant has been examined by Dr. Daniel W. Schwartz and Dr. Richard L. Weidenbacher, each of them being duly certified qualified psychiatrists. They were designated by the director of Kings County Hospital Center to examine him pursuant to the order of the court dated February 27, 1978. The defendant has also been examined by Dr. David Abrahamsen, a qualified psychiatrist designated by District Attorney Eugene Gold, and also by Dr. Martin Lubin, a qualified psychiatrist designated by Ira Jultak and Leon Stern, attorneys for the defendant.
The court is in receipt of the written reports of Dr. Schwartz, Dr. Weidenbacher and Dr. Abrahamsen. The court received an oral report from Dr. Lubin.
On Monday, March 27, 1978, the reports of the psychiatrists being before the court, defense counsel requested, and the court granted, a hearing to determine the fitness of the defendant to proceed to trial. Defense counsel moved that the hearing be closed to the public and the media and that it be *876 conducted in camera. The District Attorney interposed no objection to the request. The defendant joined in the request for an in camera hearing. In order to afford the media and any other interested party an opportunity to be heard, the court set March 30, 1978 for further argument.
The court has heard and considered the arguments of defense counsel in support of closure and the District Attorney not opposing, and attorneys representing the New York Daily News, the New York Post, Newsday, Inc., CBS, Inc., New York Press Club and the New York Fair Trial Free Press Conference in opposition thereto.
The question to be determined is, "Shall the hearing to be conducted on the eve of trial to determine the fitness of the defendant, David Berkowitz, to proceed to trial be held in camera or open to the public and to the media?”
The question is not susceptible to easy .answer. In times when the spoken word and the occurrence of events are publicized over the news media as fast as the word is spoken and an event occurs, the problem presented has received soul searching study and comment by many distinguished writers. It has been the subject of extensive learned dissertation by the United States Supreme Court, the New York State Court of Appeals and many other courts in this and other jurisdictions in our Nation.
The First Amendment of the United States Constitution provides, "Congress shall make no law * * * abridging the freedom of speech, or of the press”. It has been held that it is "no longer open to doubt that the liberty of the press, and of speech, is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action.” (Near v Minnesota, 283 US 697, 707.) The Sixth Amendment of the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury”.
Tensions, particularly in sensational cases — and this case falls within that category — have frequently arisen between the rights prescribed in the First and Sixth Amendments. Numerous decisions have not been dispositive of this perplexing problem. "So basic to our jurisprudence is the right to a fair trial that it has been called 'the most fundamental of all freedoms.’ Estes v. Texas, 381 U. S. 532, 540 (1965).” (Nebraska Press Assn. v Stuart, 427 US 539, 586.) "The First Amendment to the United States Constitution, however, se *877 cures rights equally fundamental in our jurisprudence” (Nebraska Press Assn. v Stuart, supra, p 586).
A review of cases dealing with this subject fails to uncover any decision that undertakes to assign priorities as between the First Amendment and Sixth Amendment rights, ranking one as superior to the other. "I unreservedly agree with Mr. Justice Black that 'free speech and fair trials are two of the most cherished policies of our civilization, and it would be a trying task to choose between them.’ Bridges v. California, 314 U. S., at 260. But I would reject the notion that a choice is necessary; that there is an inherent conflict that cannot be resolved without essentially abrogating one right or the other. To hold that courts cannot impose any prior restraints on the reporting of or commentary upon information revealed in open court proceedings * * * with respect to the criminal justice system is not, I must emphasize, to countenance the sacrifice of precious Sixth Amendment rights on the altar of the First Amendment.” (Nebraska Press Assn. v Stuart, supra, pp 611-612 [Brennan, J., concurring].)
It is not open to question that the defendant has a constitutionally guaranteed right to a public trial (US Const, 6th Arndt); that "Public access is secured through a fundamental concept said to be rooted in distrust for secret tribunals — the inquisition, star chamber and lettre de cachet (Matter of Oliver, 333 US 257, 268-270).” (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 376.) "Ordinarily, public trials 'serve to instill a sense of public trust in our judicial process’ (People v Hinton, supra, at p 73). But this assumes that public access in a given case poses 'no threat or menace to the integrity of the trial’ (Craig v Harney, 331 US 367, 377). Because this assumption sometimes fails, neither the public nor the press has an absolute right to attend all stages of all criminal trials (e.g., Estes v Texas, 381 US 532, 538; Matter of United Press Assns. v Valente, supra, at p 81). Particularly where a fair trial may hang suspended in the balances” (Matter of Gannett Co. v De Pasquale, supra, p 377; emphasis supplied).
This court has read the written reports of Dr. Schwartz, Dr. Weidenbacher and Dr. Abrahamsen and has considered the oral report of Dr. Lubin. Much of the reports of the psychiatrists which will constitute their testimony at the fitness to proceed hearing will reveal testimony which is clearly inadmissible at the trial. Facts developed during the *878 interview of the defendant by the psychiatrists will unquestionably be widely disseminated. The extensive coverage given to the prior hearing is ample proof that the impending hearing will be subject to equal coverage. Since the trial of the defendant will be conducted within one week of the hearing, a most serious and imminent threat will be posed, endangering the selection of a fair and impartial jury.
It has been argued that whatever risks are involved, they are outweighed by the genuine and legitimate interest the public has in this particular pretrial proceeding, and that such risks can be significantly reduced, if not eliminated, by appropriate safeguards by the court at the time of trial.
This court has found that there has been and will be pervasive pretrial publicity, as in the past, relative to the impending hearing if it be an open one. Speculation has run rampant. Much testimony, inadmissible at trial, will be adduced at the hearing; testimony that will, beyond any peradventure of doubt, impinge upon the defendant’s right to a fair trial and endanger the selection of a truly fair and impartial jury.
"Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper.” (Bridges v California, 314 US 252, 271.) "And the Court has insisted that no one be punished for a crime without 'a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power.’ Chambers v. Florida, 309 U. S. 227, 236-237 (1940). 'Freedom of discussion should be given the widest range compatible with the essential requirement of the fair and orderly administration of justice.’ Pennekamp v. Florida, 328 U. S. 331, 347 (1946). But it must not be allowed to divert the trial from the 'very purpose of a court system * * * to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures.’ Cox v. Louisiana, 379 U. S. 559, 583 (1965) (Black, J., dissenting). Among these 'legal procedures’ is the requirement that the jury’s verdict be based on evidence received in open court, not from outside sources.” (Sheppard v Maxwell, 384 US 333, 350-351.)
It has been suggested that regardless of the publicity of inadmissible, sensational and prejudicial testimony which will be adduced at the fitness to proceed hearing, "the Sixth Amendment rights of the accused may still be adequately protected. In particular, the trial judge should employ the voir *879 dire to probe fully into the effect of publicity.” (Nebraska Press Assn. v Stuart, 427 US 539, 602 [Brennan, J., concurring].)
This device, however, has not always succeeded in obviating the palliative of reversal and the direction of a new trial. "Thus, in Marshall v. United States, 360 U. S. 310 (1959), we set aside a federal conviction where the jurors were exposed 'through news accounts’ to information that was not admitted at trial. We held that the prejudice from such material 'may indeed be greater’ than when it is part of the prosecution’s evidence 'for it is then not tempered by protective procedures.’ At 313. At the same time, we did not consider dispositive the statement of each juror 'that he would not be influenced by the news articles, that he could decide the case only on the evidence of record, and that he felt no prejudice against petitioner as a result of the articles.’ At 312. Likewise, in Irvin v. Dowd, 366 U. S. 717 (1961), even though each juror indicated that he could render an impartial verdict despite exposure to prejudicial newspaper articles, we set aside the conviction holding: 'With his life at stake, it is not requiring too much that petitioner be tried in an atmosphere undisturbed by so huge a wave of public passion.’ At 728.” (Sheppard v Maxwell, 384 US 333, supra, p 351.)
The alternative of a change of venue would not be efficacious because past publicity and future publicity has and will be widely disseminated in all corners of the State. Furthermore, a defense motion for a change of venue has been denied by the Appellate Division, Second Department. (NYLJ, Dec. 12, 1977, p 12, col 3.)
An adjournment of the trial date to allow public passion and prejudice to subside would be futile. This court would then require another fitness to proceed examination and hearing immediately prior to trial to insure that the defendant was aware of the charges and was able to assist in his defense at such time. The trial would again have to be adjourned. A vicious circle would result and continue ad infinitum.
In order to clear the atmosphere from the effects of the extensive publicity that this case has generated and in order to insure the defendant a fair and impartial trial, free of emotion, passion, and prejudice, this court took appropriate action. Defense counsel, the District Attorney, personnel of the Department of Corrections and of the court were directed to refrain from giving any press interviews, and from making *880 any public statements. In the past six months, there has been no publicity of a prejudicial nature disseminated in the media of which the court is aware. A trial is now imminent under conditions which will protect the Sixth Amendment rights of the defendant. Shall such rights be sacrificed on the altar of the First Amendment? The court thinks not.
It is not necessary to opt the Sixth Amendment rights of the defendant as against the interest of the public and the First Amendment rights of freedom of the press. "[A] sensitive and wise balancing of the rights of the individual defendant and the interests of the public” (People v Darden, 34 NY2d 177, 181-182) is available.
The fitness to proceed hearing about to be conducted is not a trial on the merits. It is a proceeding, rather, to adjudicate a limited and narrow issue and is "not within the specific meaning of 'trial’ ” (People v Anderson, 16 NY2d 282, 288). This court cannot insulate a jury which has not yet been impaneled from extrinsic and inadmissible evidence. The task presented is "to ensure that further pretrial publicity [will] not impermissibly alter” the present status of an atmosphere conducive to the defendant’s Sixth Amendment rights. (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 378, supra.)
It is the decision of this court that the hearing to determine the defendant’s fitness to proceed to immediate trial be conducted in camera. The adjudication of the court, immediately upon being made, will be announced to the public and the press. If the defendant is found unfit to stand trial, a full and complete transcript of the hearing will be released to the public and the press. Of necessity, his trial would be postponed to a future date.
If the decision of the court is that the defendant is fit to stand trial, it is the intention of the court that the trial will commence within days and certainly not more than one week after such adjudication. As soon as a jury has been selected, it will be sequestered. Once the jury is insulated from prejudicial publicity, a full and complete transcript of the hearing will be released to the public. Thus, no testimony inadmissible at the trial will come to the attention of the jury. The danger that the jury will be influenced by consideration of inadmissible testimony will have been obviated. There will be no impingement on the defendant’s right to a fair trial.
The procedure to be followed finds sanction in Nebraska Press Assn. v Stuart (427 US 539, 568, supra). "The County *881 Court could not know that closure of the preliminary hearing was an alternative open to it uhtil the Nebraska Supreme Court so construed state law.” The decision of the New York State Court of Appeals in Matter of Gannett Co. v De Pasquale (43 NY2d 370, supra) sanctions closure of preliminary hearings where necessity for such action exists. Such necessity has been found to exist here.
It is the considered opinion of this court that a "sensitive and wise balancing of the rights of the individual defendant and the interests of the public” (People v Darden, 34 NY2d 177, 181-182, supra), has been achieved and none of the rights under the First and Sixth Amendments have been abrogated. The news media has not sustained the burden of showing a countervailing public interest requiring an open hearing.